All right, we'll call for the next case. Case number 16, zero spent on money, people versus more. All right, we just called Maurice Sanders. Will both attorneys that are going to present argument, please step up to the podium and identify yourselves for the record. My name is Tiffany Boyd Green. I'm a State Appellate Defender on behalf of Mr. Sanders. Good morning. Good morning, Your Honors. Assistant State's Attorney John Nowak on behalf of the people. Good morning. Each of you will have about 15 minutes to present your argument, and from that, Ms. Boyd Green, you may save out some time for rebuttal. All right, thank you. Before you start, I have a question. Yes. In this case, the trial court found the defendant guilty of the lesser-included offense of simple possession. Correct. If we reverse and remand this for a new trial, as you request, the State would proceed on the original information, and if he's found guilty of possession with the intent to distribute, he's subject to a mandatory Class X sentence with a sentence range of six to 30 years. The six-year minimum is a year more than he now faces. He'd face a maximum of 30 years, and he has a long past history of drug convictions. He could receive a long sentence. Right now, he has a five-year sentence. Are you sure that this defendant actually wants a reversal? When I spoke to him, he did indicate he wanted a reversal. However, if he was acquitted of the intent to deliver at this point, he would only be subject to charges on possession. Do you know whether he's eligible for a three-strike rule in mandatory life? I do not believe he's eligible for a three-strike rule in mandatory life. Okay. Proceed. Here, the trial court's application of the surveillance location privilege violated Mr. Sanders' right to fully cross-examine the State's only testifying witness against him. Officer Rogers was the only witness to testify about the surveillance during which Rogers allegedly observed Mr. Sanders conduct several narcotics sales. There's ample case law from this court that if the case against an accused turns almost exclusively on the testimony of a single witness, as it did in this case, that disclosure must almost always be ordered. And that's because challenging the credibility of the State's only testifying witness is essential to the defendant's case. In this case, though, wasn't there currency and controlled substances recovered? There was currency recovered, and there were... Packets? I'm sorry, for the controlled substances, yes. But that was from the lot, not from Mr. Sanders' person. And they did find currency on him, but there was no testimony that the currency in any way related to the narcotics sales. For example, in Palmer, the officer testified, well, they found $20 on him, and they were nickel bags for $5 each. Here, it was a very random amount of money, and there was no... There was currency nonetheless. There was, though he's allowed to carry cash on him. Well, I'm not saying he isn't, but also, didn't the testimony reveal that the person that was making the hand-to-hand transactions wasn't removing it from his own person, but he was going to a little location? Yes, that's correct. But I would point out that there was no corroborating evidence in this case. There was no other witness testimony. There were no videos or photographic exhibits to indicate the surveillance location, and there were no inculpatory statements. So, really, the state's entire case rested here on Officer Rogers' testimony about the surveillance. But the trial court allowed cross-examination on this issue, and the state throughout the cross-examination objected, and those objections were overruled. So, basically, counsel had an open range in terms of the questions that they were going to ask on cross-examination. So, what information didn't come out that was so prejudicial? Well, we don't know what information didn't come out because he didn't know the exact surveillance location. And as the First District said in Palmer, it's of little significance to allow a defense attorney to cross-examine on his line of sight or his view. But isn't this case inconsistent, factually, with Palmer with regards to the location of the site where the officers were located, and also the other factors in terms of when the transactions were taking place? So, how is this factually the same as Palmer? It is factually the same as Palmer because, in that case, the officer did testify that he had an ability to view, and there was an issue with vegetation, but his testimony at trial was that his view was clear. He had an unobstructed view of the, and this is in Palmer that I'm talking about, that he had an unobstructed view of the defendant. And that's a very common type of testimony from the officers during trial. Let me stop you here, but in this case, okay, you're talking about an unobstructed view, as in Palmer, correct? And in Maxwell and in Jackson, all of which were reversed. But in this case, did the lawyer ever ask this officer, even one time, whether there was anything that obstructed his view? The officer testified, I had a clear, he had a clear view. When I crossed examination, nobody tested it. Nobody asked any questions whether there was anything that obstructed him whatsoever. Correct, except that if the officer, or if the defense attorney, had no information from which to challenge that testimony, there really isn't any point in asking the question. He said, how far were you? What was your view? Of course there's a point. The point is that if there's something that obstructed his view, then you've got a good argument. But you never even asked it. I mean, not you, but whoever tried the case. Correct. However, in none of the cases that I cited did the defense attorney ever say, was your view obstructed? They asked the testifying officer, what was your view? What was your vantage point? How far were you? And every single officer in each of those cases testified, I had a clear, unobstructed view. In every one of those cases, his testimony was tested at cross-examination, but in this case it was not. It was tested in that he asked... I didn't see any tests. Well, I can look at my notes of the questions that were asked during the cross-examination. Did anybody go out there to see if there was any trees that obstructed his vision or anything that would have obstructed his vision? There was no indication where the surveillance location was that they could determine that. They knew it was three houses down. He was up high. He said he was in the house across the street from the vacant lot, one house over. Or something to that effect. But I'm fairly certain there was more than one house across from this vacant lot, which seemed to be fairly large. So there really wasn't any indication without some sort of exact surveillance location, which the court never ascertained during the in-camera hearing. And that's the other significant problem with this case. It was in the testimony that came out that this officer in this case had binoculars. He was elevated. No view was obstructed. And the defendant was the only person in the lot during the duration when they were surveilling him. Whereas in Palmer, the officers are on the ground level. There's weeds obstructing his view. And he's about maybe 120 feet away. And it's at night. So I think actually Palmer is a little bit different than this case. Well, in that regard, there was no testimony about vegetation because that officer was on the ground level and that did come out. But here there really was not a chance to cross-examine other than defense attorney challenged how far he was from Sanders when he first saw him, whether he was elevated at the time, whether he was west of Sanders, what was his view when you first saw him. So he did ask questions on cross-examination about the location. If you look at Enry Manual M, which is another First District case, there was nothing indicating that that officer could not observe that defendant as he was apparently flashing gang signs towards the entrance to the park. And that's the same with Jackson, which this Court also reversed. And there was no indication in Jackson that the view was obstructed in any way. It was a clear view. So really that is not the only determining factor. And again, I want to go back to the errors that happened in this case. The first is that during the in-camera hearing, the Court never ascertained the exact surveillance location. And that is an error that... Is the in-camera transcript in the record? It is in the record. And in that case, there was... In Jackson, that was also a problem that occurred, in that there was no exact location ascertained. And the reviewing Court said, without knowing the exact location, the Court couldn't exercise its discretion properly. And so that was an abuse of discretion. The second problem that happened in this case is that after the in-camera hearing, when the Court came back on the record, the Court said, I'm going to deny the defendant's motion to disclose the surveillance location. And there was never that opportunity, which in Jackson, this Court said, is mandatory. It's required that after the Court has the in-camera hearing and decides the State has met its burden, which it does either by showing that those surveillance happened on private property, or that there is a public interest in... It's a useful location that would be compromised by disclosure. So the Court in the in-camera hearing made the determination that the State had met its burden. It needed to then give the defense an opportunity to rebut that burden and that challenge and that upholding of the privilege. But the defense never got that chance here. He should have been able to, and he wasn't. And in Jackson, that was a huge reason for the reversal of the conviction. This Court said that is a mandatory required opportunity that is a critical component in protecting a defendant's right to confrontation. So that was the second error that occurred in this case. And for those reasons, the Court's application of the surveillance location privilege wasn't properly based on any sort of exercise of discretion as it needed to be. This trial court gave him the greatest break in the world. They didn't find him guilty of delivery of a controlled substance. They found him with possession. Correct, but the State still has to prove that charge. And here, the defendant wasn't able to cross-examine the only State's witness against him. Just because the Court found that the State didn't meet its burden in establishing intent to deliver doesn't mean that we should find him guilty without the State giving him a meaningful opportunity to challenge that evidence against him on both charges. Is there anything further at this time? We are going to give you some time for rebuttal. No, nothing further. We would ask that you reverse and remand for a new trial. We will give you some time for rebuttal. Okay, thank you. May it please the Court. Again, my name is John Nowak, Assistant State's Attorney on behalf of the people. In this case, Your Honor, defendant's confrontation rights were preserved. And Judge Wilson properly exercised his discretion. This defendant was able to test thoroughly the credibility of the surveillance officer. And that officer's testimony was corroborated by the recovery of $69 from the defendant. In this case, the defendant was allowed to ask how far the officer was from the defendant. And the answer was approximately three house lengths. Defense counsel was allowed to ask the officer's position relative to the defendant. And the answer was west of the defendant. Defense counsel was also allowed to ask the officer the angle from which he saw the defendant. And the answer was he was elevated. And that he also had multiple views of this defendant as he was heading towards 1053 Lawndale. Three house lengths away. To the west. Elevated. The specific location of where that building was that he was doing this observation from would not have added anything to this. In fact, it's easy enough to deduce based on the location of this offense. 1053 Lawndale and being three houses over. And the officer testified that he saw two transactions. He never lost sight of the defendant. And that was corroborated by the recovery of $69 from this defendant. And also the recovery of six oil packets of heroin from the red and yellow cardboard paper the officer saw the defendant retrieve these objects from. Now a defendant in his brief relies on four primary cases on this particular point. Flournoy, Knight, Manuel, and Palmer. And then Jackson for the last two points you raised. This division's decision in Flournoy from 2016 is especially important in this case. Because it in its terms distinguishes our current case from that in Flournoy. In Flournoy, the officer saw the defendant receive paper currency from three separate buyers. And never lost sight of the defendant. But when they stopped the defendant. There was no money. There was no money. No money. Flournoy is a familiar case. Yes. Authored by Your Honor, yes. And this court, Your Honor, wrote, quote, this circumstance, the not recovering any money. This circumstance seriously calls into question the officer's ability to deserve, and in turn, his account of events. And then in the next paragraph, paragraph 50, this court distinguished the Flournoy facts from facts such as cases like this. And those are cases, quote, where money was recovered from the defendant's person. Thus corroborating the surveillance officer's testimony regarding narcotic sales. That's this case. This case is corroborated by the recovery of $69 from this defendant. And what about their argument that this case is similar actually to Palmer? It isn't, Your Honor. In Palmer, the officer wasn't three house lengths away. He was 40 yards away. He had to use binoculars. And on top of that, the officer testified in court that he was, quote, in a lot of vegetation. There's no testimony of vegetation here. Our officer was not 40 yards away. He didn't need to use binoculars. And there, the transactions, there were three transactions, but only $20 was recovered. So this is far different than our case. And also different from our case is the Knight case from 2001, which is really where this court set forth the procedures for when the surveillance privilege is to be implemented. And there in Knight, the officer was 50 feet away, saw three-quarters of the defendant's face, lost sight of the defendant for one to two minutes. There were a lot of people in the area. And again, in Knight, just as in Florida, no money was recovered from that defendant. And it's from Knight that defense counsel quoted this part of it, the almost always language. It almost always, it's almost always required to have the exact surveillance location disclosed when the officer's testimony, it's based primarily on the officer's testimony, and it's uncorroborated. It's that uncorroborated part that is missing from this case and from the defendant's argument. Because here it was corroborated by the recovery of the $69. Defendant also- Doesn't the fact that there was packets recovered add anything to this? That absolutely adds. That is another corroboration. That wasn't recovered on defendant, but of course that's not the observation- No, but the testimony wasn't that he was pulling it out of his pocket. The testimony was that he was going to a location and retrieving it, and then he was giving it to the person that he was transacting. Yes, Your Honor. That's a further corroboration. In fact, in such detailed corroboration that the officer testified that he saw a defendant going back and forth to a red, was it a red and yellow paper, and then when they went to the scene, it was a red and yellow cardboard. And so that matched up precisely with what the officer observed from being three house lengths away. Defendant also talked in argument here about Manual M. Far different case. That officer wasn't just a few house lengths away. That officer was two blocks away and testified that there were several buildings between the park and the surveillance location. Two blocks away. Far different in this case. As to Jackson, also out of this Division 2017, defendant cites it for two reasons. There were four independent reasons in Jackson that this found to be reversible. There, those four reasons include that the circuit court failed to ascertain the exact surveillance location in the in-camera hearing. Second, that the officer testified in camera to matters unrelated to the location. The third separate reason was that the State appeared and participated in the in-camera hearing. That didn't occur here either. And fourth, that there was no opportunity for the defendant to satisfy the Burnham persuasion. So the defendant here is focusing on the first and fourth of those four independent reasons. The big point that the State participated in that case. Yes. Participated in that case, and on top of that, that And defense was not allowed in the room. Yes, Your Honor. Defense was in the room, just the State. Matters unrelated to the actual location. Yes. It went far beyond the surveillance location. Here as to the court allegedly not ascertaining the specific location, that's not true. In the in-camera hearing, the officer didn't testify to this, he didn't name the specific street address, but he got into even more detail than came out at trial. So it was even more detailed than three house lengths away. I'm not going to go into it here. I believe defense counsel mentioned it, but that part is under seal. And so I'm not going to discuss it here in court. But sure enough, if you look at that testimony in the in-camera hearing and put that together in context with 1053 Lawndale being the location of this, it's quite simple to deduce the exact location of the surveillance. And finally, as to the burden shift... Were there any questions that were sustained that you recall? Not that I recall from the record, Your Honor. Certainly not as far as the locations. I mean as far as the locations. Right. No. That most of them were overruled. They were. They were, Your Honor. And so here as far as the burden shift on that last point from Jackson, Judge Wilson had already considered, already had the written motion from defense counsel as to all the reasons why defense counsel felt it was necessary here. Judge Wilson held that in-camera hearing and then came out on the record and said, after balancing this, I'm going to restrict you from getting into the exact location, but you can get in everything else. And defense counsel's response was, Thank you, Judge. I mean, there wasn't really anything else to add at that point. Nor is there here at this point, Your Honors, because this defendant was allowed to test the credibility of the surveillance officer thoroughly. His Sixth Amendment rights were protected and the officer's testimony was corroborated. For these reasons, though, in our brief, we ask that this Court affirm the Defendant's Commission.  Do we agree? Would you like to step up? All right. So is this case really different than Jackson? This case is very factually similar to Jackson. Well, Mr. Nowak pointed out four factors. This Court, not necessarily this exact panel. Correct. Pointed out as significant in that case. So how do you reconcile those differences? In Jackson, it's actually very similar. And I'd like to point out how to this Court. It was filed in a pretrial motion to disclose. The in-camera hearing did include the Assistant State's Attorney and the officer. Here, the Court did not allow the Assistant State's Attorney in. Or the defense. Or the defense. The Court followed the procedure in having just the officer and the Court and the Court reporter in the proceeding. The problem, really, that exists with both Jackson and our case is that the defense was never given that required, mandatory opportunity to get a chance to respond. So, although the State was in the in-camera hearing with the Court and the officer, the real error, that was improper, but the real error came from depriving the defendant of this essential right to challenge that finding of the privilege and applying and being able to protect his right to confrontation. So that's really the big error. But the testimony was very similar in Jackson in that the officer said, you know, I saw, he testified he had an unobstructed view that he was 50 to 100 feet away. There was nothing in his way of his view. I do want to point out, Counsel said that there were no binoculars used in that case. That's incorrect. There were binoculars used in this case that the officer testified to. So, the two errors that occurred in Jackson were very significant. The facts of the cases are similar and we have the same two errors here in that there was no exact surveillance location determined. Counsel said, well he said I was three houses over across the street. It was, there's a lot of different locations that could be, that could satisfy. Maybe it's one house. Maybe it's a different house. Maybe there's a tree in the middle of two houses. We just don't know. And Defense Counsel, because he couldn't know the exact location, was not able to challenge that officer's testimony on his view. He wasn't able to investigate the case by seeing the actual location or even pulling it up on Google Map with the address. He had no knowledge of facts that would challenge the officer's testimony. It just stood unchallenged. He took a look at it. He had a lot of reasons. A lot of questions to ask. Somebody went and looked at it first. Not without knowing the exact location. He doesn't know the exact. You know, you know the lot. And you take pictures of it. You look at it. Well, for example, he said. You say he doesn't know anything about it that's going too far. It's pushing the envelope too far. Well, to say that it's three houses over. From what? From what point? There's a large vacant lot. Where are you counting those three houses from? Cities across the street. Correct. But where across the street? There's a lot of different places that that could mean. Are there only three houses? So that you know it has to be this one house? Without some sort of certainty, defense counsel couldn't really challenge the officer's testimony. And that is a big problem in this case. And he was never even given the chance to explain why it was important to his defense to rebut the state's application of the privilege in this case. And the Supreme Court still hasn't really weighed in on this? The Supreme Court has not weighed in on this yet. Okay. I do want to point out that although there was cash recovered, which counsel relies heavily on as corroborating the defendant's testimony, that the fact that he had money alone is not enough to substantiate or corroborate the state's case. No, but in that other case, there was testimony that he never lost sight of the person. And he testified, the officer now, the officer testified that he observed transactions, never lost sight of them, observed an exchange of money or something, you know, currency, and yet at trial there was no money recovered. And that was significant to that decision. That was significant. There was no corroboration. And, in fact, there was a suggestion that, well, if you saw this the way you've described it, why wasn't there any money recovered since you never lost sight of that person? But the other thing about this case is that there is some other corroboration that I think can't be ignored, and that is that this was not a transaction where there was money being exchanged and the person was taking something right out of their pocket. This was testimony where the officer was going, I'm sorry, that the defendant was going to a location and retrieving something, and it was red and yellow or red and gold, and then he was making an exchange. So, I mean, do you think that's not some kind of corroboration when there's actually, there was substances recovered? But in each of these cases, except for Henry Emanuel M., which involved a weapon, in all the other cases cited, Palmer, Flournoy, Jackson, there were narcotics recovered as well. And one thing in Flournoy, as Your Honor knows, this court distinguished it from Chris Reed in Britain and said, you know, here we don't have the same corroboration that we had in those cases. Well, in both Reed and Britton, there was more than one officer who testified, and in both Reed and Britton, there was a photo exhibit introduced so that you could see where... Which one was on the porch? Wasn't there one of those two, Reed, or the other one is at an actual location, and a person is coming to the door? I believe that might have been Chris, but that involved a motion to suppress. All right. I may not be correct on that, but that's my best recollection. So, Flournoy also talks about, as you know, that there needs to be some form of other corroboration in addition to the fact that there was no cash recovered, which definitely indicated something suspicious when the officer testified, I saw him get cash, and there was no cash. But the other thing that Flournoy looks at is there's no other evidence corroborating, no video, no other witness testimony, no inculpatory statements, and we don't have any of that here. So, for those reasons, and because of the errors that occurred during the in-camera hearing and afterwards, we would ask that this Court find that that was an abuse of discretion, reverse, and remand for a new trial. All right. Thank you. Case was well-argued and well-briefed. And we will take it under 20 minutes.